# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JENNIFER TUNG, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | |
| vs. | CLASS ACTION COMPLAINT |
| BRISTOL-MYERS SQUIBB COMPANY, MICHAEL GIORDANO, FOUAD NAMOUNI, FRANCIS M. CUSS, GIOVANNI CAFORIO, LAMBERTO ANDREOTTI, and CHARLES A. BANCROFT, | JURY TRIAL DEMANDED |
| Defendants | |

Plaintiff Jennifer Tung ("Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Bristol-Myers Squibb Company ("Bristol-Myers" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired common shares of Bristol-Myers between January 27, 2015 and October 9, 2016, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2.    Bristol-Myers is a global biopharmaceutical company that develops, licenses, manufactures, markets, and sells pharmaceutical and nutritional products. Bristol-Myers products and experimental therapies address cancer, heart disease, HIV and AIDS, diabetes, rheumatoid arthritis, hepatitis, organ transplant rejection, and psychiatric disorders.

3.    As of January of 2015, the Company's CheckMate-026 study investigating the use of Opdivo (nivolumab) monotherapy as first-line therapy in patients with advanced non-small cell lung cancer ("NSCLC") was underway.

4.    Founded in 1887, the Company was formerly known as "Bristol-Myers Company" and changed its name to "Bristol-Myers Squibb Company" in 1989.  Bristol-Myers is headquartered in New York, New York, and its stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "BMY."

5.    Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Bristol-Myers' CheckMate-026 trial was more likely to fail than Defendants were representing; (ii) Bristol-Myers' CheckMate-026 trial failed more severely than the Company indicated it did in its

August 5, 2016 announcements and disclosures concerning the trial; and (iii) as a result, Bristol-Myers's public statements were materially false and misleading at all relevant times.

6.      On August 5, 2016, the Company announced that its CheckMate-026 trial investigating the use of Opdivo (nivolumab) as monotherapy had failed because it did not meet its primary endpoint of progression-free survival.

7.      On this news, the Company's stock price fell $12.04 per share, or 16%, to close at $63.28 per share on August 5, 2016, on unusually heavy trading volume. The stock price continued to fall on the next trading day, declining another $2.98 per share, or 4.7%, on unusually heavy trading volume, to close at $60.30 per share on August 8, 2016.

8.      On October 9, 2016, Bristol-Myers disclosed the final primary analysis of CheckMate-026, including the finding that overall survival was only 14.4 months for Opdivo versus 13.2 months for chemotherapy.

9.      On this news, the Company's stock price fell $5.62 per share, or 10.1%, to close at $49.81 per share on October 10, 2016, on unusually heavy trading volume.

10.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

12.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

13.    Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b).  The Company's principal executive offices are located within this Judicial District.

14.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

15.    Plaintiff, as set forth in the accompanying Certification, purchased Bristol-Myers securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

16.    Defendant Bristol-Myers is incorporated in Delaware, and the Company's principal executive offices are located at 345 Park Avenue, New York, New York 10154. Bristol-Myers' securities trade on the NYSE under the ticker symbol "BMY."

17.    Defendant Michael Giordano ("Giordano") served as the Company's Senior Vice President and Head of Development for Oncology at all relevant times until July 2016.

18.    Defendant Fouad Namouni ("Namouni") has served as the Company's Head of Oncology Development since July 25, 2016.

19.    Defendant Francis M. Cuss ("Cuss") has served at all relevant times as the Company's Chief Scientific Officer and Executive Vice President.

20.    Defendant Giovanni Caforio ("Caforio") served as the Company's Chief Operating Officer ("COO") from June 5, 2014 to May 5, 2015, and served as its CEO from May 5, 2015 through the end of the Class Period.

21.     Defendant Lamberto Andreotti ("Andreotti") served as the Company's CEO from May 2010 to May 5, 2015.

22.     Defendant Charles A. Bancroft ("Bancroft") served at all relevant times as the Company's Chief Financial Officer ("CFO").

23.     The Defendants referenced above in ¶¶ 17-22 are sometimes referred to- herein as the "Individual Defendants."

24.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Bristol-Myers' reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

25.     Bristol-Myers Squibb Company is a global biopharmaceutical company that develops, licenses, manufactures, markets, and sells pharmaceutical and nutritional products. Bristol-Myers Squibb products and experimental therapies address cancer, heart disease, HIV

and AIDS, diabetes, rheumatoid arthritis, hepatitis, organ transplant rejection, and psychiatric disorders.

26.     As of January of 2015, the Company's CheckMate-026 study investigating the use of Opdivo (nivolumab) monotherapy as first-line therapy in patients with advanced non-small cell lung cancer ("NSCLC") was underway.

**Materially False and Misleading Statements Issued During the Class Period**

27.     The Class Period begins on January 27, 2015, when Defendant Cuss participated in an investor call to discuss the Company's earnings for the fourth quarter 2014. On the call, Defendant Cuss, in relevant part, stated: "We also have a first-line study underway [referring to CheckMate-026] and it's our intent to beat chemotherapy, double it in first line as we have already done in melanoma and in second-line squamous."

28.     On September 8, 2015, Defendant Giordano participated in an investor call at the 16th Annual World Conference on Lung Cancer. On the call, Defendant Giordano, in relevant part, stated: "As a reminder, the 026 study design for which we have great confidence . . . has been designed appropriately to read out significantly in the next several months."

29.     On October 1, 2015, Defendant Giordano participated in an investor call at the Leerink Partners Rare Disease Roundtable Conference. On the call, Defendant Giordano, in relevant part, stated:

> The CheckMate -026 study . . . was fully enrolled and will mature next year . . . . The data from CheckMate-012 and others, which looks at PFS, suggests that we're very confident that that study will be a positive study, in particular, the characterization of the survival.

30.     On January 28, 2016, Defendant Cuss participated in an investor conference call to discuss the Company's Q4 2015 financial results. On the call, Defendant Cuss, in relevant part, stated:

> As far as 026 is concerned, we've actually taken great care in the design of this study. . . . And we've used a wealth of data, both published and our internal data on Opdivo, to help guide us. So we believe we really have got the optimum balance of speed and the design to deliver positive results in the widest population of first line lung patients, as we've done in other studies of Opdivo recently.

31.     On March 7, 2016, Defendant Namouni participated in the Cowen and Company Global Health Care Conference, which included a question and answer portion. During the Q&A, Defendant Namouni, in relevant part, stated:

> This study [CheckMate -026] was well-designed and this study represents all the knowledge in terms of designs that was really made at Bristol-Myers Squibb from our understanding from a number of positive Phase 3s looking at different end points; and this help us to design these type of studies. . . . [T]his study is wellpowered and well-designed to detect a PFS difference at the right time in this population of patients.

32.     On April 28, 2016, Defendants Cuss and Caforio participated in an investor conference call to discuss the Company's Q1 2016 financial results. On the call, Defendant Cuss, in relevant part, stated:

> Now regarding CheckMate -026, we said that both the events and the timing of the follow-up were important considerations for the timing of the analysis. And I want to say that based on what we now know about the progress of the trial and the current event rate, we believe we could have the results from CheckMate -026 in the third quarter, which as you appreciate is earlier than we had previously estimated. Now I just want to emphasize, there are always risks inherent in clinical trials. But this change in timing of having the data does not increase it for the CheckMate -026 study.

***

> So let me emphasize. We've really taken great care in the design of Study -026....

On the same call, Defendant Caforio, in relevant part, stated:

> [O]n Study -026 it's obviously not appropriate to speculate on other trials. Let me just reiterate. We are very comfortable about the design of our trial. We are very comfortable about the depth of understanding that went into the statistical plans. And we are increasingly comfortable about the choices we've made in terms of the dosing and schedule of Opdivo, as it relates to the efficacy we are seeing, both in the marketplace and in clinical trials. And I think it will be important to really look at the results of our study to

7

understand the performance of Opdivo in the first-line setting in lung cancer.

33.     On July 28, 2016, Defendant Cuss participated in an investor conference call to discuss the Company's Q2 2016 financial results. On the call, Defendant Cuss, in relevant part, stated:

> I'm confident in the study design of -026. And I look forward to seeing the data in weeks, not months.
>
> ***
>
> I just know they [the development, regulatory, and filing teams] are relishing the opportunity to get their hands on the data for -026 and to maintain or even exceed the performance they've already done. So it's a very—they're a very excited team. And we're very confident in them to move this quickly forward.

34.     The statements referenced in ¶¶ 27-33 above were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Bristol-Myers' CheckMate-026 trial was more likely to fail than Defendants were representing; and (ii) as a result, Bristol-Myers's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

35.     On August 5, 2016, the Company announced that its CheckMate-026 trial investigating the use of Opdivo (nivolumab) as monotherapy had failed because it did not meet its primary endpoint of progression-free survival in patients with previously untreated advanced nonsmall cell lung cancer (NSCLC).

36.    On the same day, August 5, 2016, the Company issued a press release entitled "Bristol-Myers Squibb Statement on Top-Line Results from CheckMate-026." Therein, the Company, in relevant part, stated:

> While the news regarding CheckMate -026 is disappointing, Bristol-Myers Squibb is proud of all that the company has and aims to accomplish with Opdivo. We are indeed transforming cancer care, and remain committed to bringing the benefit of our medicines to the greatest number of patients across multiple cancers.
>
> We designed our development program in lung cancer to address the unmet need of every lung cancer patient and our scientific approach is a bold one. Our first-line strategy consists of two trials – one that is studying Opdivo alone and one studying Opdivo in combination with Yervoy.

37.    On this news, the Company's stock price fell $12.04 per share, or 16%, to close at $63.28 per share on August 5, 2016, on unusually heavy trading volume. The stock price continued to fall on the next trading day, declining another $2.98 per share, or 4.7%, on unusually heavy trading volume, to close at $60.30 per share on August 8, 2016.

38.    Even after the announcement on August 5, 2016, Defendants continued to mislead the market before they released the complete results of the trial, claiming that once all the data was released, it would show the efficacy of Opdivo. In reality, such statements were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Bristol-Myers' CheckMate-026 trial failed more severely than the Company indicated it did in its August 5, 2016 announcements and disclosures concerning the trial; and (ii) as a result, Bristol-Myers's public statements were materially false and misleading at all relevant times.

39.    Bristol-Myers presented its analysis of the full data set from CheckMate-026 at the European Society of Medical Oncology on October 9, 2016. On an investor call during the

conference, Defendants explained to investors that CheckMate-026 had failed to demonstrate the efficacy of Opdivo versus chemotherapy in subgroups of the lung cancer patient population.

40.     Analysts understood that design flaws likely caused CheckMate-026 to fail. For example, an analyst at William Blair explained that "meaningful imbalances in the enrollment across treatment arms, including patents with liver metastasis and male/female ratios may have contributed to the trial failure."

41.     On this news, the Company's stock price fell $5.62 per share, or 10.1%, to close at $49.81 per share on October 10, 2016, on unusually heavy trading volume.

42.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

43.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Bristol-Myers common shares traded on the NYSE during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

44.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Bristol-Myers common shares were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds

or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Bristol-Myers or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

45.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

46.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

47.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of Bristol-Myers;

- whether Defendants caused Bristol-Myers to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Bristol-Myers securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

11

48.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

49.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Bristol-Myers common shares are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common shares; and

- Plaintiff and members of the Class purchased and/or sold Bristol-Myers common shares between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

50.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

51.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material

information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### <u>Against All Defendants</u>

52.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53.     This Count is asserted against Bristol-Myers and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

54.     During the Class Period, Bristol-Myers and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

55.     Bristol-Myers and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Bristol-Myers common shares during the Class Period.

56.     Bristol-Myers and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Bristol-Myers were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of Bristol-Myers, their control over, and/or receipt and/or modification of Bristol-Myers allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Bristol-Myers, participated in the fraudulent scheme alleged herein.

57.     The Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Bristol-Myers personnel to members of the investing public, including Plaintiff and the Class.

58.     As a result of the foregoing, the market price of Bristol-Myers common shares was artificially inflated during the Class Period.  In ignorance of the falsity of Bristol-Myers's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Bristol-Myers common shares during the Class Period in purchasing Bristol-Myers common shares at prices that were artificially inflated as a result of Bristol-Myers's and the Individual Defendants' false and misleading statements.

59.     Had Plaintiff and the other members of the Class been aware that the market price of Bristol-Myers common shares had been artificially and falsely inflated by Bristol-Myers's and the Individual Defendants' misleading statements and by the material adverse information which Bristol-Myers's and the Individual Defendants did not disclose, they would not have purchased Bristol-Myers's common shares at the artificially inflated prices that they did, or at all.

60.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

61.     By reason of the foregoing, Bristol-Myers and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Bristol-Myers common shares during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act Against The Individual Defendants

62.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

63.     During the Class Period, the Individual Defendants participated in the operation and management of Bristol-Myers, and conducted and participated, directly and indirectly, in the conduct of Bristol-Myers's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's inadequate internal safeguards in data security protocols.

64.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Bristol-

Myers's financial condition and results of operations, and to correct promptly any public statements issued by Bristol-Myers which had become materially false or misleading.

65.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Bristol-Myers disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Bristol-Myers to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Bristol-Myers within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Bristol-Myers common shares.

66.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Bristol-Myers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 21, 2018

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile:   (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
Email:  peretz@bgandg.com

*Attorneys for Plaintiff*

17

**Submission Date**

2018-02-12 14:18:34

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.     I  make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Bristol-Myers Squibb Company ("Bristol-Myers" or the "Company"), as well as media and analyst reports about the Company. Plaintiff believes and authorizes the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Bristol-Myers securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.     I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Bristol-Myers securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Bristol-Myers securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.     I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury that the foregoing is true and correct.

## Name

**Print Name**

Jennifer Tung

## Acquisitions

**Configurable list (if none enter none)**

| Date Acquired | Number of Shares Acquired | Price per Share Acquired |
|---|---|---|
| Aug 10 2016 | 200 | 60.57 |
| Sept 2 2016 | 100 | 55.99 |

## Sales

# Documents & Message

**Upload your brokerage statements showing your individual purchase and sale orders.**



**Signature**

**Full Name**

Jennifer Tung



**BRISTOL-MYERS SQUIBB CO. (BMY)**                                    **Tung, Jennifer**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES/UNITS | PRICE PER SHARES/UNITS |
|---|---|---|---|
| 8/10/2016 | Purchase | 200 | $60.5700 |
| 9/2/2016 | Purchase | 100 | $55.9900 |